UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JAMES RUTHERFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-80-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | **MEMORANDUM OPINION** |
| of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff James Rutherford ("Rutherford") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 5 and 9] Through this action, Rutherford seeks to reverse the decision of an administrative law judge ("ALJ") concluding that he was not entitled to a Period of Disability and Disability Insurance Benefits ("DIB"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Rutherford.

**I.     BACKGROUND**

Rutherford filed an application for a Period of Disability and DIB on February 2, 2005. The claim was denied initially and upon reconsideration. Thereafter, Rutherford requested a

hearing before an Administrative Law Judge ("ALJ"). On May 2, 2006, a hearing was conducted before ALJ Frank Letchworth. During the hearing, the ALJ heard testimony from Rutherford and J. D. Flynn, a vocational expert. Thereafter, the ALJ issued a decision denying benefits to Rutherford. [*See* Transcript ("Tr."), pp. 13-23.] The ALJ concluded that Rutherford retained the residual functional capacity to perform light work with a sit/stand option and some postural limitations. [Tr., p. 20, 22] Rutherford's request for review was denied by the Appeals Council on January 9, 2007. [Tr., pp. 6-8] Thereafter, Rutherford filed this action.

At the time of the administrative hearing, Rutherford was a 56 years-old and held a college education. [Tr., p. 428] He last met the insured status requirements of the Social Security Act on December 31, 2004. [Tr., p. 15] He alleges a disability beginning September 1, 2003,[1] due to ischemic heart disease, discogenic and degenerative disorders of the back, anxiety, and depression.[2] [Record No. 8, p. 1] Rutherford has past work experience as a automobile salesman and a warehouse worker/laborer. [Tr., p. 22] The ALJ found that, through the date last insured, Rutherford could not perform his past relevant work as a warehouse worker/laborer, but could perform his past relevant work as a automobile salesman. [Tr., p. 22]

After reviewing and evaluating the medical evidence of record and considering the testimony presented by the claimant, the ALJ found that Rutherford had the residual functional

---

[1] Initially, Rutherford alleges disability beginning March 31, 2002. However, he amended his onset date at the hearing to September 1, 2003. [Tr., p. 15]

[2] ALJ Letchworth noted that Rutherford did not initially allege disability due to anxiety, but that the pertinent medical documents include a history of anxiety. [Tr., p. 18] However, in his brief to this Court, Rutherford states that he does allege disability due to anxiety. [Record No. 8, p. 1]

capacity to perform light work. [Tr., p. 20] Specifically, the ALJ found that Rutherford had the following residual functional capacity:

> to perform light activity with lifting 20 pounds occasionally 10 pounds frequently, sitting/standing/walking for up to six hours for each activity with a sit/stand option every 30 minutes, and no more than occasional climbing, stooping, and crawling, frequent climbing of stairs, kneeling and crouching; he must avoid moving and dangers [sic] machinery, exposure to extreme temperatures, and heights.

[Tr., p. 20] Based on these findings, the ALJ concluded that Rutherford was not disabled as defined in the Social Security Act and regulations, through the last date insured, December 31, 2004. [Tr., p. 23]

## II.   LEGAL STANDARD

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b) Second, a claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c) Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d) Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then

review the Claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f)

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g) The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal

of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Credibility determinations are particularly within the province of the ALJ. *Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987).

**III. DISCUSSION**

Rutherford asserts that the Commissioner's decision is not supported by substantial evidence. More specifically, he alleges that the ALJ erred in finding that he did not suffer from

a severe mental impairment and failed to give sufficient weight to the opinion of his psychiatrist. In addition, he asserts that the ALJ failed to give appropriate deference to the physical limitations identified by his treating physicians. Rutherford seeks an order remanding this matter for further proceedings pursuant to 42 U.S.C. § 406(g).

The Court has examined the ALJ's evaluation of Rutherford's claims of disabling mental limitations and agrees with his findings and conclusions. In evaluating these claims, the ALJ considered Rutherford's live testimony and whether it was corroborated by the objective medical records. The ALJ observed that "[t]he claimant seems convinced that he cannot work, but the weight of the evidence through December, 2004 does not support listing level or even significantly limiting psychological symptoms." [Tr., p. 19] The ALJ noted that Rutherford had previously been prescribed Diazepam for pain, as opposed to anxiety, and that he had been prescribed Valium in 2002. The ALJ also considered the opinion of Dr. Robina Bokhari, a psychiatrist who diagnosed Rutherford with Generalized Anxiety Disorder and depression with a Global Assessment of Functioning ("GAF") scale score of 50.[3] The ALJ determined that Rutherford's relationship with Dr. Bokhari amounted to "little more than an examining relationship" and that the weight of the evidence did not support Dr. Bokhari's findings. [Tr., p. 19] The ALJ further noted that Rutherford did not allege disability due to anxiety and did not seek psychological treatment until after his claim was denied. [Tr., p.18-19] In conclusion, the

---

[3] Dr. Bokhari first saw Rutherford in August, 2005, well after the date that Rutherford last met the insured status requirements of the Social Secuirty Act on December 31, 2004. However, Dr. Bokhari's assessment includes a description of the mental impairment as having previously existed for three years. [Tr., p. 352] Accordingly, even though the claimant must establish disability on or before the date last insured to be entitled to disability benefits, the Court will consider the opinion of Dr. Bokhari, as did ALJ Fetchworth.

ALJ adopted the findings of the state agency psychological consultants, Dr. Ilze Sillers and Dr. Lea Perritt, and found that there was "no evidence of more than mild mental limitations in his activities of daily living, social functioning, or concentration, persistence and pace." [Tr., p. 19]

In considering the severity of a claimant's medical impairment, an ALJ must determine whether the impairment or a combination of impairments, "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as physical functions; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; and use of judgment. 20 C.F.R. § 404.1521(b). Conversely, a non-severe impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 691 (6th Cir. 1985) (citations omitted).

Further, "an ALJ is not required to accept a claimant's subject complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). In evaluating the credibility of a claimant, the Sixth Circuit has recognized that a reviewing court should be "particularly reluctant" to substitute its judgment of the credibility of the claimant for that of the ALJ, since the ALJ has "seen the claimant in the flesh" and has had the opportunity to observe his demeanor. *Gooch*, 833 F.2d at 592. As such, the reviewing court "should show deference to the

decision of the administrative law judge in assessing credibility." *Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

In the present case, the ALJ found that, "[o]verall, the claimant's allegations are not supported by the weight of the evidence to the degree alleged," and that "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." [Tr., p. 20, 22] This finding is consistent with the medical evidence in the record, and the Court is unwilling to disturb the ALJ's credibility determination. Additionally, although Rutherford argues that the ALJ improperly considered the opinion of Dr. Bokhari to be an examining (rather than a treating ) relationship, and failed to give the opinion proper weight even if it did only amount to examining relationship, it is clear that the ALJ gave Dr. Bokhari's opinion the appropriate deference and rejected it in light of the weight of the evidence.

The ALJ found Dr. Bokhari's opinion to be unpersuasive because he had only seen Rutherford two times prior to his assessment and because his clinical notations were "based primarily on the claimant's subjective reports." [Tr., p. 18] It is well-established that an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). Further, the ALJ's characterization of Dr. Bokhari's relationship with the Claimant is in accord with the directives of 20 C.F.R. § 404.1527(d). That section provides that in evaluating the opinion of a medical source, an ALJ must consider: (1) the nature and extent of the relationship; (2) the supportability of the medical source's opinion, such as medical signs and laboratory

findings; (3) the consistency of the opinion; (4) specialization; and (5) any other relevant factors. 20 C.F.R. § 404.1527(d).

Here, the ALJ determined that Rutherford's relationship with Dr. Bokhari amounted to "little more than an examining relationship" and rejected her findings based on inconsistent evidence and the lack of supportability of her opinion. [Tr., p. 18-19] Regardless of whether the Court considers Rutherford's relationship with Dr. Bokhari as a treating relationship, this finding is consistent with the law and the substantial evidence in the record. *See Perkins v. Apfel*, 14 F. App'x 593, 601 (6th Cir. 2001) ("Even a treating physician's opinion must be supported by 'sufficient clinical findings and be consistent with the evidence.'" (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)); *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002) (holding that the "opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary"); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (noting that a treating physician's opinion can be discounted when: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. §§ 404.1527(d)(2), 416.927(e)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record).

The record reflects that, after two visits with Rutherford in August and September, 2005, Dr. Bokhari submitted a medical source statement indicating that Rutherford was "'markedly' impaired in his ability to perform the psychological requirements of work in several areas, and his impairments 'significantly affect' his abilities in other areas." [Tr., p. 18]  He diagnosed Rutherford with Generalized Anxiety Disorder and depression with a Global Assessment of Functioning scale score of 50.  However, the ALJ correctly noted that Dr. Bokhari's clinical notations are inconsistent with this finding.  Dr. Bokhari noted that Rutherford appeared healthy, coherent, and friendly, and that, on the date of his GAF assessment, he was alert, oriented, and cooperative with normal memory, abstract ability, and attention, as well as intact insight and judgment. [Tr., p. 313-315] These observations do not support a finding of a severe mental impairment under 20 C.F.R. § 404.1521(b).  *See also Salmi*, 774 F.2d at 691.

As discussed above, the ALJ further noted that he was unpersuaded by Dr. Bokhari's testimony due to the length of treatment and the fact that it was based primarily on Rutherford's subjective reports of anxiety and depression.  The ALJ also noted that Rutherford did not allege disability due to anxiety and did not even see a psychiatrist until after his claim was denied. Finally, the ALJ considered the fact that Rutherford had never been treated for decompensation and found that there was "no evidence that he is unable to function outside his home." [Tr., p. 19]  As a result of his consideration of all these factors, the ALJ concluded that Rutherford did not suffer from more than mild mental limitations.  [*Id.*]

Because the ALJ properly considered Dr. Bokhari's opinion in light of the factors outlined in 20 C.F.R. § 404.1527(d) and because the medical evidence supports his decision that

Rutherford did not suffer from a severe mental impairment as of December 31, 2004, the Court concludes that the ALJ properly weighed all of the evidence presented in determining that Rutherford does not possess a "medically determinable mental impairment." [Tr., p. 188]

Rutherford also argues that the ALJ failed to give due consideration to the reports and opinions of his treating physician, Dr. Harry Kennedy. While some deference is accorded the findings of treating physicians, "[u]ltimately, of course, the determination of disability is the prerogative of the Secretary, not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *see also* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your residual functional capacity . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.").

The "opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary. The Commissioner may reject the opinion of a treating physician where good reasons are found to do so in the record." *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002). In *Wilson v. Comm'r of Soc. Sec.*, the Sixth Circuit noted that a treating physician's opinion can be discounted when: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does

not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. §§ 404.1527(d)(2), 416.927(e)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record. *Wilson*, 378 F.3d 541, 546 (6th Cir. 2004).

In this case, the Court concludes that the ALJ properly considered all of the medical evidence presented regarding Rutherford's physical and mental impairments and functional limitations. After analyzing the evidence presented, he concluded that Rutherford did not have a disabling mental or physical impairment. The ALJ examined the medical evidence presented by all treating and consulting doctors, including Dr. Kennedy. Dr. Kennedy opined that Rutherford could only sit for four hours in an eight-hour day, stand for one hour in an eight-hour day, walk for one hour in an eight hour work day, frequently lift ten pounds and occasionally lift twenty pounds. [Tr., p. 309] Dr. Kennedy further asserted that Rutherford's symptoms would interfere with attention and concentration, interrupt his work, and would likely cause him to be absent from work more than six days in a month.

After considering the entire record, the ALJ adopted Dr. Kennedy's findings as to the lifting limitations and the length of workday, finding that Rutherford could perform light work with lifting twenty pounds occasionally and ten pounds frequently, and sitting, standing, or

walking for up to six hours[4] with a sit/stand option every thirty minutes.[5] However, the ALJ noted that,

> I accord some weight to Dr. Kennedy's assessment but note that neither his cardiologist nor neurosurgeon has placed any limitations on the claimant's activities, which undermines those the less qualified Dr. Kennedy. Furthermore, the claimant clearly engages in more than one hour of walking per day, shown throughout the period of time relevant herein. In addition, he has very few "horrible" days that stop him from walking. He has required minimal and intermittent follow-up treatment for his chronic condition, and I have found all but one of those mentioned as the basis for his limitations less than sever. These facts tend to negate Dr. Kennedy's assertions that the claimant would not be able to perform reliable or sustained activity.

[Tr., p. 21] Ultimately, the ALJ determined that Rutherford suffered from severe impairments including degenerative disc disease and coronary artery disease with residuals of angioplasty and stent placement, but that the combination of these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr., p. 17, 19]

Based on the record, it is apparent that the ALJ considered all of Dr. Kennedy's opinions, adopted some of them, and concluded that some were not supported by substantial evidence in the record, particularly those that were inconsistent with the findings of the specialists and Rutherford's own testimony concerning his daily activities. The ALJ found that "[t]he claimant's daily activities are not those typically associated with a totally disabled individual and are more consistent with those expected of a fairly able-bodied person for his age." [Tr., p. 20]

---

[4] In the Medical Interrogatories form submitted by Dr. Kennedy, Dr. Kennedy failed to fill in the line for "Total Work (sitting, standing or walking)." It appears that the ALJ reached the six hour total by adopting Dr. Kennedy's findings that Rutherford could sit for four hours, stand for one hour, and walk for one hour in an eight-hour workday, totaling six hours of sitting, standing or walking. The ALJ also added the additional limitation of a sit/stand option every thirty minutes based on Dr. Kennedy's assertions.

[5] The Commissioner asserts that the sit/stand option requirement is even more restrictive than the limitations opined by Dr. Kennedy. [Record No. 9, p. 4-5]

Most notably, the ALJ observed that Rutherford testified that he walks one and a half miles in the morning and two to two and a half miles in the afternoon six days a week. Although Rutherford testified that he sometimes misses two days a week, he also testified that he goes two to three weeks without missing a single day. Rutherford further stated that he fishes, vaccums twice a week, mows the law with a riding mower, grocery shops once a week, drives, cooks, and performs minor household repairs. As a result, the ALJ found that Dr. Kennedy's assertions concerning Rutherford's ability to perform reliable and sustained work were inconsistent with the substantial evidence in the record. Further, the ALJ properly considered the fact that the specialists did not impose any limitations on Rutherford's activities in evaluating his claim. *See* 20 C.F.R. 404.1527(d)(5).

After reviewing the medical evidence considered by the ALJ, the Court finds that his decision to reject Dr. Kennedy's conclusions regarding the degree of Rutherford's physical impairments and limitations is supported by substantial evidence. And because the Court also finds that the ALJ properly determined that Rutherford did not suffer from a severe mental impairment based on the evidence in the record, it will affirm his decision.

### IV. CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** that:

(1)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 9] is **GRANTED**;

(2)     Plaintiff James Rutherford's Motion for Summary Judgment [Record No. 5] is **DENIED**;

   (3)  The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

  This 31st day of August, 2007.

